UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

AMELIA C.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:20-CV-01950-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Amelia C. seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, that decision is AFFIRMED.

## STANDARD OF REVIEW

    The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## DISCUSSION

### I.   Step Three

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 16, 2017. Tr. 20. At step two, the ALJ determined plaintiff suffered from the following severe impairments: right breast scar tissue and ulceration, status

post breast cancer and mastectomy; diabetes mellitus and diabetic neuropathy; lumbar degenerative disc disease; obesity; and plantar fasciitis (20 CFR 404.1520(c)). *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 21. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could "perform sedentary work, as defined in 20 CFR 404.1567(a), with the following additional limitations. She can never climb ramps, stairs, ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, squat, kneel, and crouch. She can never crawl. She can occasionally overhead reach with the dominant right upper extremity.

At step four, the ALJ found plaintiff was able to perform past relevant work as a telephone operator. Tr. 28. Therefore, the ALJ found plaintiff was not disabled.

Plaintiff contends the ALJ erred by failing to find, at step three, that her "impairments, particularly her ulcerating lesion on her chest, met or equaled Listings 8.04 or 8.05." Pl. Br. 5.

Listing 8.04 describes chronic infections of the skin or mucous membranes:

> Chronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

20 C.F.R. § 404, Subpt. P, App. 1, 8.04. Listing 8.05 describes dermatitis:

> Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

*Id.* at 8.05. "Extensive skin lesions" are "those that involve multiple body sites or critical body areas, and result in a very serious limitation." *Id.* at 8.00(C)(1). "Examples of extensive skin lesions that result in a very serious limitation include but are not limited to":

3 – OPINION AND ORDER

>   a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>   b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>   c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.*

The Commissioner contends plaintiff's claim lacks merit because (1) plaintiff points to evidence of only one lesion near on her chest near the right shoulder, and therefore cannot satisfy the requirement of multiple "skin lesions," and (2) the lesion was limited to plaintiff's chest, and therefore did not involve "multiple body sites or critical areas." Def. Br. 2.

Plaintiff counters that she had more than one lesion—"at least one lesion on her chest and another on her shoulder"—although she admits that "they did not occur simultaneously." Pl. Reply 1. But even if plaintiff can satisfy the multiple "skin lesions" requirement, the medical record does not support a finding that the lesions resulted in a "very serious limitation." Rather, chart notes indicate the wound was "mild in severity," Tr 431, and plaintiff described a pain level of 5/10. Tr. 40; *see also* Tr. 45 ("minimal pain"). Although plaintiff developed a staph infection and was administered two rounds of oral antibiotics, Tr. 45, the record shows that at one point, following treatment with Doxycycline, the wound was "better." Tr. 440. Moreover, other than oral antibiotics, the recommended treatment was conservative and limited to topical antibiotics, saline irrigation, gentle debridement, and non-adhesive dressings. Tr. 436; *see also* Tr. 583 ("skin can be treated with gentle cleansers, antibiotic ointments and sterile dressings").

Plaintiff's testimony also did not describe a serious limitation. Plaintiff testified that she could drive, although she "tr[ied] not to drive much" because the seatbelt was "right across" the area of the ulcer and "hurt." Tr. 82. She could shop for groceries, other than needing help with

heavier items. Tr. 83. And she mostly performed household chores, except for help with laundry and cleaning up after the dog because it was difficult to bend over. Tr. 83-84.

Although plaintiff claimed she was unable to lift over her head or reach out with her right arm, the ALJ accounted for this in finding that plaintiff could perform her past work as a telephone operator. Tr. 85. Plaintiff described that, in her job, she answered the telephone with a headset and did not have to hold a phone with her right arm. Tr. 86. And to answer the phone, she hit the space bar on a computer keyboard and then observed data on a monitor screen. Tr. 87.

In sum, based on the record, the ALJ did not err in finding that plaintiff's ulcerating lesion(s) did not meet or equal Listings 8.04 or 8.05.

## II.     RFC—Mental Limitations

Plaintiff also claims the ALJ "improperly failed to include any mental limitations in the RFC, such as a limitation to simple, routine tasks." Pl. Br. 8.

At step two, the ALJ found that plaintiff's "anxiety disorder, depression, and unspecified neurocognitive disorder, considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore non-severe." Tr. 20. The ALJ considered the "paragraph B" criteria. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ determined plaintiff had no limitation in understanding, remembering, or applying information, in interacting with others, and in adapting or managing herself. Tr. 20-22. The ALJ concluded plaintiff had "mild limitation" "[w]ith regard to concentrating, persisting, or maintaining pace." Tr. 22. The ALJ found that plaintiff's mental impairments were not as debilitating as she alleged because they were inconsistent with the objective findings, which were normal, and inconsistent with her activities, which included

driving, preparing meals, caring for her teenage daughter, performing chores, paying bills, attending medical appointments, following instructions from healthcare providers, taking medication, using the Internet, maintaining her hygiene, caring for pets, and otherwise managing her household.

Then, the ALJ explained that the "residual functional capacity assessment reflects the fact I found no mental health limitations found in the 'paragraph B' mental function analysis." Tr. 21. In fashioning the RFC, the ALJ elaborated further on the reasons for discounting plaintiff's testimony regarding her mental limitations. The ALJ observed that although plaintiff testified she quit working because she could not absorb new information, (1) she "admitted she quit work two weeks before the new job tasks were implemented and had never actually tried the new job tasks other than being trained for them," *see* Tr. 89, (2) she admitted "she could have kept performing work as a switchboard operator," *see id.*, and (3) "the record shows she quit working to move to Oregon." Tr. 24 (citing Tr. 360 ("She is moving to the west coast with her husband.")). These findings are all supported by substantial evidence in the record and constitute valid reasons for rejecting plaintiff's subjective symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (upholding an adverse credibility determination where the claimant stated that he left his job for reasons other than his injury).

The ALJ also found plaintiff's claim that she could not "remember anything" was inconsistent with "objective findings of record, which show normal memory other than an isolated instance of diminished memory at the physical consultative examination." *Id.* The ALJ further observed that "despite her alleged memory difficulties, she cares for her family, cares for pets, drives, shops, does crafts, performs chores, and does most of the cooking," and "could manage her checkbook." *Id.* These are other permissible reasons to reject plaintiff's testimony.

6 – OPINION AND ORDER

*See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that an ALJ can consider a lack of supporting medical evidence when assessing credibility); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that, in discounting a plaintiff's testimony, an ALJ may consider activities of daily living that are inconsistent with the alleged symptoms).

20 C.F.R. § 404.1545(a)(2) provides that, in determining the RFC, "[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'" *See also Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) ("Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC."). Here, the ALJ considered plaintiff's non-severe mental impairments in formulating the RFC, and explained that the "residual functional capacity assessment reflects the fact I found no mental health limitations found in the 'paragraph B' mental function analysis." Tr. 21. The ALJ therefore committed no error. *See Malbog v. Kijakazi*, No. CV 20-00500 JAO-RT, 2021 WL 4750574, at *5–8 (D. Haw. Oct. 12, 2021) ("Courts have held that *Hutton* is distinguishable in cases where it was clear from the record that the ALJ considered and discussed limitations associated with the claimant's non-severe impairments in constructing the claimant's RFC."); *Jones v. Berryhill*, No. EDCV 17-1138-AS, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018) (finding no error where the ALJ stated the RFC assessment "reflects the degree of limitation [the ALJ] found in the 'paragraph B' mental function analysis"); *Frary v. Comm'r of Soc. Sec.*, No. 1:20-CV-00260-SAB, 2021 WL 5401495, at **13-16 (E.D. Cal. Nov. 18, 2021) (collecting cases).

//

//

//

7 – OPINION AND ORDER

**ORDER**

The Commissioner's decision is AFFIRMED.

DATED  May 13, 2022.

                                                                     /s/ Youlee Yim You
                                                         Youlee Yim You
                                                         United States Magistrate Judge